Armstrong, Administrator, et al. *v*. State of Indiana, ex rel. Klaus, Auditor.

[No. 10,147. Filed November 19, 1918. Rehearing denied June 5, 1919. Transfer denied January 27, 1920.]

1. Appeal.—*Record.—Briefs.—Failure to Object in Time.—Waiver. —Review.*—In an appeal governed by Acts 1917 p. 523, §691a *et seq.* Burns' Supp. 1918, appellee's failure to proceed under the act waives defects in the record and briefs, and where the court can ascertain therefrom, with reasonable certainty, the questions intended to be presented, they will be considered. p. 308.

2. Taxation.—*Inheritance Tax.—Transfers.—Contemplation of Death.—Evidence.—Inferences.*—In a proceeding to fix inheritance tax assessments, evidence of the age, condition of health, statements, conduct and surroundings of the decedent, *held* to show that the trial court reasonably drew the inference that the conveyances in discussion were made in contemplation of the grantor's death, although there was no direct evidence warranting such inference and although it may be said that other and contrary inferences might with equal or greater certainty have been drawn from the facts and circumstances shown by the evidence, and also *held,* to be some evidence of such fact so inferred. pp. 311, 319.

3. Taxation.—*Inheritance Tax.—Nature.*—An inheritance tax is not a tax upon property, but on the right of succession or transfer of property or some beneficial interest therein. p. 314.

4. Statutes.—*Tax Laws.—Construction.*—While taxation statutes

will be strictly construed against the state or taxing power, they should be fairly and reasonably construed so as to effectuate the intention of the legislature. p. 314.

5. TAXATION.—*Inheritance Tax Laws.—Operation.*—Inheritance tax statutes are not intended to take away the right to make absolute gifts and transfers of property, but to impose a tax upon transfers by will, by the laws of inheritance, and by gifts or transfers of like nature and properly classifiable therewith. p. 314.

6. TAXATION.—*Inheritance Tax.—Evasion of Law.—Policy.*—It is the policy of the law that the owner of property shall not evade an inheritance tax statute nor defeat its purpose, by any form of conveyance or transfer, where the facts clearly and reasonably bring it within the act. p. 314.

7. TAXATION.—*Inheritance Tax Laws.—"Contemplation of Death." —Words and Phrases.*—The words "in contemplation of death," as used in inheritance tax statutes, do not refer to the general expectation of death entertained by all persons, but do refer to that expectation of death arising from bodily or mental conditions which prompts persons to dispose of their property to those they deem entitled to their bounty. p. 315.

8. TAXATION.—*Inheritance Tax Laws.—"Contemplation of Death." —Gifts Causa Mortis and Inter Vivos.—Construction.—Statutes.*— The words "in contemplation of death" in inheritance tax statutes, are not restricted to their technical meaning as applied to gifts *causa mortis*, but are given a liberal interpretation to effectuate such laws without destroying the right to make absolute gifts of property, and gifts *causa mortis*, and likewise gifts *inter vivos* made in contemplation of death, come within the provisions of such statutes. p. 315.

9. STATUTES.—*Adoption of Statute.—Construction.—Presumptions.* —In construing a statute adopted from another state or states, it is presumed that the legislature in enacting our statute sought to provide a law substantially like those of the states from which it is apparent that our statute was taken either literally or in substance, and also, by such enactment, adopted the construction previously placed upon such similar statutes by the courts of such other states. p. 316.

10. STATUTES.—*Construction.—Reasonable and Fair Construction.* —Where two constructions of a statute are possible, that one should be adopted which renders the statute fair, reasonable and effectual, rather than one which defeats the purpose of the enactment. p. 317

11. TAXATION.—*Inheritance Tax Law.—Uniform Application.*—The legislature intended the Inheritance Tax Law of 1913 (§10143a

Burns 1914, Acts 1913 p. 79) to apply alike to all estates where the essential facts are identical, without regard to the means employed to effectuate the transfer. p. 317.

12. STATUTES.—*Conjunctive and Disjunctive Words.—"And."—"Or."*—In construing a statute "and" may be interpreted to mean "or," and *vice versa,* where by so doing, effect may be given to a statute in harmony with the plain legislative intent. p. 318.

13. TAXATION.—*Inheritance Tax.—Transfers in Contemplation of Death.—Construction.—"And."*—Under §10143a, cl. 4, Burns 1914, Acts 1913 p. 79, §1, cl. 4, taxing transfers "made in contemplation of the death of the grantor *and* intended to take effect in possession or enjoyment at or after such death," the word "and" is used in the sense of "or." p. 318.

14. STATUTES.—*Legislative Construction.*—In construing a statute governing an action, a later amendment may be considered, but is not binding upon the court, as it may have been made to correct a clerical error or to remove an ambiguity by a more definite expression of the original legislative intent. p. 318.

From Tipton Circuit Court; *James M. Purvis,* Judge.

Proceeding to determine and assess inheritance tax in the estate of Benjamin F. Conway, deceased. From the judgment rendered, Wilbur Armstrong, administrator of said estate, and others, appeal. *Affirmed.*

*James C. Blacklidge, Donald F. Elliott, D. Lawrence Bock* and *Clinton Brown,* for appellants.

*Ele Stansbury,* Attorney-General, and *Edward M. White,* for appellees.

FELT, P. J. —Benjamin F. Conway died intestate on December 27, 1915, in Tipton county, Indiana. At the time of his death he was the owner of 153.77 acres of real estate in Tipton county and certain personal property.

He left surviving him as his only heirs at law, his widow, the appellant Sarah E. Conway, and the fol-

lowing adult children, viz., the appellants Elmer E. Conway, Everett G. Conway, Lieuella Armstrong, Daisy Applegate, Laura B. Covalt, and Minnie Langston.

On December 22, 1914, Benjamin F. Conway and wife, by warranty deeds, conveyed to their children certain real estate as follows: Elmer E. Conway, 150 acres; Everett G. Conway, 100 acres; Lieuella Armstrong, 102½ acres; Daisy Applegate, 119 acres; Laura B. Covalt, 100.56 acres; Minnie Langston, 100 acres, all of which is in Tipton county, Indiana, except a portion of the land conveyed to Mrs. Langston, which is in Howard county, Indiana.

The deeds were duly delivered to each of the grantees and recorded a few days after the date of their execution. Wilbur Armstrong was duly appointed and qualified as administrator of the estate of said Conway, deceased.

On January 10, 1916, the Judge of the Tipton Circuit Court referred the matter of said estate to the inheritance tax appraiser and county assessor for valuation. On February 7, 1916, the inheritance tax appraiser filed his report, which included each tract of land so conveyed as aforesaid, and placed a valuation thereon as the basis for collecting the inheritance tax, authorized by law.

Each of said grantees filed separate exceptions to such report in which each alleged that the appraised value was excessive, and that the property so conveyed was not liable for the payment of such tax.

The case was submitted to the court and tried on the exceptions to the report of the appraisers aforesaid. The court made a general finding in favor of the state and against the appellants, overruled the exceptions to the report of the appraisers, and in

such finding also set out the facts in detail as to each of said conveyances, giving the description and acreage of the real estate conveyed and the value of each separate tract, and also the value of the decedent's property held by him at the time of his death.

The report of the appraisers shows the total value of real estate, including that conveyed as aforesaid, to be $145,560 and the value of the personal property of the estate to be $5,642.02. After allowing all authorized deductions the court found the cash value of the estate, subject to the inheritance tax, to be $104,331.02, and the total amount of the tax to be $825.15. Judgment was rendered in accordance with the finding, to which each of the appellants excepted. Of the amount of such tax appellants concede that $66.26 is just and legal, but contend that the sum of $758.89 is illegal, because based upon the value of the real estate so conveyed as aforesaid.

A separate motion for a new trial of each of the appellants and their joint and several motion were overruled, and exceptions reserved by each appellant.

The conveyances by decedent were made by warranty deeds in the usual statutory form, and each recited a consideration of $10,000, and contained a stipulation that the "grantor holds full possession of the within described land until March 1, 1916." The court found that each of said conveyances was made without any money consideration and for love and affection.

Each of said grantees in the motion for a new trial alleges that the court erred in holding that the real estate conveyed by Benjamin F. Conway on December 22, 1914, was made in contemplation of his death and intended to take effect in possession or enjoyment at or after his death, within the provisions

of the Inheritance Tax law of the State of Indiana; that the decision of the court is not sustained by sufficient evidence, and is contrary to law. Each of the appellants has assigned as error the overruling of his or her separate motion for a new trial, and the overruling of their joint and several motion.

Appellee contends that appellants' briefs are not so prepared as to present any question under the rules and decisions of this court. Also that the decision is sustained by sufficient evidence; that "and," as used in the inheritance tax statute, may be construed as "or," and be made to apply to conveyances made in contemplation of death to take effect in possession or enjoyment at or after the death of the grantor; that in either view of the statute the evidence warrants the inferences necessary to sustain the decision of the trial court; that, there being some evidence to sustain the decision, this court is bound thereby.

The briefs are justly subject to criticism, and under many decisions of the Supreme Court and this court fail to properly present the question of the

1. sufficiency of the evidence to sustain the decision of the trial court. However, the record in this case was filed on August 23, 1917, and the appeal is therefore governed by the act of 1917 (Acts 1917 p. 523.) Appellee did not proceed as required by said act, and under its provisions has waived defects in the record and briefs that formerly were available under the rules of appellate procedure in this state. Applying the provisions of this act to the case at bar, we are able to ascertain from the briefs and record, with reasonable certainty, the questions intended to be presented with reference to the sufficiency of the evidence to sustain the decision of the trial court, and

shall therefore consider and decide such questions. *Leslie* v. *Ebner, Admr.* (1918), 67 Ind. App. 32, 118 N. E. 829.

The act of 1913 was in force when the transfers in this case were made. The part directly involved here is clause 4 of §10143a Burns 1914, Acts 1913 p. 79, which authorizes the tax: "When the transfer is * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor and intended to take effect in possession or enjoyment at or after such death."

In one view of the case clause 5 of the same section may be involved. It provides for such tax: "When any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer, whether made before or after the passage of this act."

Appellants contend that the evidence fails to show that the deeds in controversy were made "in contemplation of death," or that they were "intended to take effect in possession or enjoyment at or after such death," and that by the use of "and" in joining the two phrases, above quoted, the legislature has required proof of both before property so transferred can be subjected to payment of the inheritance tax. Also that the reservation in the deeds of possession and control of the land conveyed for a definite period, to March 1, 1916, considered in connection with the other undisputed facts of the case, show conclusively that the conveyances were not intended to take effect in possession or enjoyment at or after the death of the grantor, and that they were made without any reference whatever to such death.

It is agreed by the parties that the evidence shows that the decedent was seventy-nine years of age when

he made the conveyances in controversy, and that he died on December 27, 1915, one year and five days after the execution of the deeds to his several children; that the consideration named in the deeds did not pass, but was made a basis for computing the war tax; that prior to his last illness decedent had never had any severe sickness, had never consulted a physician except for rheumatism, and had been a strong, rugged man; that he was in good health both prior and subsequent to the execution of the deeds on December 22, 1914, except he suffered from rheumatism; that his last illness was of three or four days' duration, and he died of double pneumonia, when eighty years of age.

The evidence also shows that for many years decedent was a prosperous farmer and stockman; that he looked after his several farms and kept and cared for several head of live stock, personally, on his home place; that he cared for such live stock until a few days before his death; that at times he was considerably crippled by rheumatism and took treatments for it from a physician; that on two or three different occasions during the summer of 1914 the decedent talked to his son-in-law, Wilbur Armstrong, about deeding his land to his children, and in substance said that he had more than he could handle and he would make his children share part of the load; that his children were all working hard and he was in a position to help them get ahead.

The evidence also shows that he talked to C. M. Ware, his physician, when getting medicine, and in substance said that he had to start at three o'clock in the morning and work till night to get all his work done; that he thought he would divide his land up with his children and stop some of the work he was

doing; that at another time in 1914 he said he had been thinking about the matter they had talked about in the spring and he then said, "I think I will make a deed to the children and let them have the responsibility." He also mentioned the subject to some of his children.

The evidence also shows that all of the decedent's children were adults, prosperous and self-sustaining; that on Sunday before the deeds were executed all the children except Mrs. Armstrong, who was sick, met at the home of their father and talked over the subject of dividing up the land; that he asked the opinion of each child, talked over the part that should go to each, said he wanted to divide up his property with his children if satisfactory arrangements could be made, and they said they would be satisfied with the division he would make; that in making the division he took into account some indebtedness due him from one of his sons-in-law; that decedent had control of the lands so conveyed at the time of his death.

There was also evidence tending to show that he had some knowledge of the inheritance tax law when he executed the deeds to his children.

The trial court inferred from the facts and circumstances of the case shown by the evidence that the conveyances under discussion were made in 2. contemplation of the death of the grantor. While there is no direct evidence warranting such inference, when the age, condition of health, statements, conduct and surroundings of the decedent are considered in connection with the conveyances made by him, it appears that the trial court may reasonably have drawn such inference, though it may be said that other and contrary inferences may with

equal, or greater certainty be drawn from the facts and circumstances shown by the evidence.

The further question arises as to whether the evidence is sufficient to sustain the inference that the transfer was "intended to take effect in possession or enjoyment at or after" the death of the grantor.

The grantor was in his usual health when he made the conveyances and he set a definite date when the grantees should come into possession and enjoyment of the property conveyed by him.

If the facts and circumstances shown by the evidence in connection with the conveyances and the reservation of full possession by the grantor to the date named in the deeds reasonably authorize the inference that in fixing such date the grantor contemplated that his death would occur on or before the date so named in such reservation, it would follow that the transfers were made to take effect at or after the death of the grantor within the meaning of the statute.

But if the word "and" in the concluding part of clause 4, *supra,* may be read as "or," then the finding that the transfers were intended to take effect in possession or enjoyment at or after the death of the grantor becomes unimportant, and the decision may rest upon the finding that the transfers were made in contemplation of death.

Eliminating the portions of the statute not applicable to the facts of this case, we find that it provides (§1): "That a tax shall be imposed upon any transfer of property, real, personal or mixed * * * (§4) when the transfer is * * * of tangible property within the state, made by a resident * * * by deed * * * in contemplation of the death of the grantor * * * and intended to take effect in possession or enjoyment at or after such death."

(§5) "When any such person  *  *  * becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer, whether made before or after the passage of this act."

Were it not for the provisions of §5 of the act of 1913, *supra,* the provisions of §4 would be unambiguous, but the provision of §5 authorizing the tax when the grantee becomes beneficially entitled to the property conveyed, either in *possession* or *expectancy,* while in perfect harmony with the idea of a transfer of property made in contemplation of the death of the grantor, is inconsistent with the idea that in addition to such contemplation of death, to subject the property transferred to such tax, it must also be proved that the transfer was not to take effect in any sense until the death, or subsequent to the death of the donor or grantor, for by §5, *supra,* the idea is clearly expressed that the inheritance tax may be collected when the transferee becomes beneficially entitled to the property "in *expectancy* or in *possession.*"

This we think is true, even though it may appear that the primary purpose of §5, *supra,* was to apply the provisions of the act to transfers of property made before, as well as to those made subsequently to, the passage of the act. For, conceding such to be the purpose of §5, the presumption must be indulged that the language employed was intended to bring all of such transfers under the provisions of the act, and to be in harmony with the other provisions of the statute. If "and" in §4 of the act may be read as "or," all the provisions of the statute are harmonious and consistent with the apparent intention

of the legislature as gathered from the full context of the act.

We may be aided in our interpretation of the statute by a general view of inheritance tax laws.

3.    Strictly speaking, an inheritance tax is not a tax on property, but on the right of succession or transfer of property or some beneficial interest therein.

While it is generally held that taxation statutes will be strictly construed against the state or taxing power, nevertheless they should be fairly and

4.    reasonably construed so as to effectuate the intention of the legislature in enacting such laws. Ross, Inheritance Taxation §§1, 5, 8, 35; *Matter of Gordon* (1906), 186 N. Y. 471, 79 N. E. 722, 10 L. R. A. (N. S.) 1089-1094; 37 Cyc 768; *Barnes* v. *Doe* (1853), 4 Ind. 132; *Washington Nat. Bank* v. *Daily* (1906), 166 Ind. 631, 636, 77 N. E. 53.

It is a generally recognized principle or rule of law that inheritance tax statutes are not intended to take away the right of a person to make an

5-6.    absolute gift and transfer of his property, but they are intended to impose the tax upon transfers of property by will, by the laws of inheritance, and by such other gifts or transfers as are of like nature and may properly be classed therewith. Where such statutes have been enacted, it is the policy of the law that the owner of the property shall not evade the law, or defeat the purpose of its enactment by any form of conveyance or transfer, where the facts clearly and reasonably bring such transfer within the provisions of the enactment. Ross, Inheritance Taxation §§111, 112, pp. 151, 152; *Rosenthal* v. *People* (1904), 211 Ill. 306, 71 N. E. 1121; *Estate of Merrifield* v. *People* (1904), 212 Ill. 400, 72 N. E. 446,

447; *State Street Trust Co.* v. *Treasurer,. etc.* (1911), 209 Mass. 373, 95 N. E. 851.

The words "in contemplation of death," as used in inheritance tax statutes, do not refer to that general expectation of death entertained by all persons, but they do refer to that expectation of death which arises from such bodily or mental conditions, irrespective of the cause in any particular case, which prompts persons to dispose of their property to those they deem entitled to their bounty. Those words when employed in taxation statutes are not restricted to the technical meaning of such phrases when applied to gifts *causa mortis,* but are given a reasonable and liberal interpretation, which tends to make effectual such taxation laws without destroying the right of the owner of the property to make an absolute gift of the same. Gifts *causa mortis* come within the provisions of the statute, and likewise gifts *inter vivos* made in contemplation of death. Ross, Inheritance Taxation §§117-120; *Rosenthal* v. *People, supra; People* v. *Kelley* (1905), 218 Ill. 509, 75 N. E. 1038; *In re Benton's Estate* (1908), 234 Ill. 366, 84 N. E. 1026, 18 L. R. A. (N. S.) 458, and notes, 14 Ann. Cas. 107; *People* v. *Burkhalter* (1910), 247 Ill. 600, 93 N. E. 379, 139 Am. St. 351; *State* v. *Pabst* (1909), 139 Wis. 561, 121 N. W. 351, 359; *Matter of Price* (1909), 62 Misc. Rep. 149, 116 N. Y. Supp. 283; *Matter of Palmer* (1907), 117 App. Div. 360, 102 N. Y. Supp. 236.

Several states preceded Indiana in the enactment of inheritance tax laws and our statute in its general provisions is similar to most of such statutes, particularly those of the States of Illinois, New York, Wisconsin, and California. Sections 4 and 5 of our act of 1913, are literal copies of the Illinois and New York

statutes, except in the statutes of those states the word "or" is used where "and" is employed in §4 of the Indiana act of 1913.    § 9597, p. 5646, 5 Ill. Stat. 1913; §220, p. 2650, 3 Stover, N. Y. Anno. Code 1902.

In one view of our statute such use of the word "and" may afford a pursuasive argument in favor of the proposition that the legislature deliberately departed from the provisions of the statutes from which our laws were so taken, and intended our statute to be given effect according to its literal interpretation.    But an examination of all the provisions of the several statutes above mentioned induces the belief that the use of the word "and" in §4 of the Indiana act was the result of a clerical error or a mere oversight, because of the ambiguity and inconsistency it brings into the act, which would have been avoided by using the word "or" as employed in the acts from which our statute was taken.

Furthermore, the general propositions above stated were declared by the courts in construing and applying such other statutes, prior to the enactment of the statute under consideration, and it therefore is presumed that the legislature in enacting our statute sought to provide a law substantially like those of the states from which it is apparent our statutes were taken either literally or in substance, and also by the enactment of such similar statutes adopted the construction previously placed upon such laws by the courts of such other states. Ross, Inheritance Taxation §33; *People* v. *Griffith* (1910), 245 Ill. 532, 92 N. E. 313; *Jarvis* v. *Hitch* (1903), 161 Ind. 217, 67 N. E. 1057; *City of Laporte* v. *Gamewell Fire, etc., Co.* (1896), 146 Ind. 466, 469, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. 359.

Viewing our statute in the light of the purpose and

history of its enactment, and likewise in the light of the foregoing general principles, the intention of the legislature seems to have been to put a tax upon the transfer of property made by deed or other instrument wherever such transfer is made in the contemplation of death, or intended to take effect at or after the death of the grantor, donor or vendor, as well as in cases where property passes by will or by the intestate, or inheritance laws of the state.

Thus construed the provisions of §4 of the act are harmonious with the provisions of §5, which subjects property to the tax "when any person * * * becomes beneficially entitled, in possession or *expectancy,* to any property or the income thereof."

The legislature evidently intended the law to apply alike to all estates where the essential facts are identical, without regard to the means employed to effectuate the transfer. By the use of "and" in §4 of the act (clause 4 of §10143a, *supra,*) the transfer might be made by deed in contemplation of death and yet the tax could not be levied unless it also appeared that the transfer was intended to take effect at or after the death of the grantor, while in a case similar in all respects except the means employed to effectuate the transfer was a will instead of a deed, the tax would have to be imposed, for a will takes effect at the death of the testator. We cannot presume that the legislature intended to make possible such inconsistencies or intended to open the way for such inequitable results. Where two constructions are possible, that one should be adopted which renders the statute fair, reasonable and effectual, rather than one which defeats the purpose of the enactment in whole or in part. *Brown-Ketcham Iron Works* v. *Geo. B. Swift Co.* (1913),

53 Ind. App. 630, 652, 100 N. E. 584, 860; *Vollmer* v. *Board, etc.* (1913), 53 Ind. App. 149, 153, 101 N. E. 321; *Greenbush Cemetery Assn.* v. *Van Natta* (1912), 49 Ind. App. 192, 199, 94 N. E. 899.

It is also a recognized rule of construction that "and" may be interpreted to mean "or," and *vice versa,* where by so doing effect may be given to a statute in harmony with the plain legislative intent as gathered from all the provisions of the enactment. *State* v. *Myers* (1896), 146 Ind. 36, 38, 44 N. E. 801; *Smith* v. *City* (1855), 7 Ind. 86, 90; 29 Cyc 1506; 2 Cyc 286; *Middleton* v. *Greeson* (1886), 106 Ind. 18, 21, 5 N. E. 755; Sutherland, Statutory Construction §§252-324; *Witherspoon* v. *Jernigan* (1903), 97 Tex. 98, 76 S. W. 445, 447. This rule is applicable to the case at bar, and we therefore hold that the word "and" in clause 4, *supra,* is used in the sense of "or."

In so construing this statute we have taken cognizance of the fact that in 1917 the legislature amended the statute and used "or" where "and" was employed in §4 of the act of 1913. Acts 1917 p. 367, §10143a Burns' Supp. 1918. The subsequent amendment may be considered in construing the act of 1913, but it is not binding upon the court. The amendment may have been made to correct a clerical error, or to remove an ambiguity and to more definitely express the original legislative intention in enacting the statute. *Taylor* v. *State, ex rel.* (1907), 168 Ind. 294, 297, 80 N. E. 849; *Greenbush Cemetery Assn.* v. *Van Natta, supra.*

In addition to the foregoing change in the statute the act of 1917, *supra,* also provides: "That any conveyance, gift or transfer made within two years of the death of any decedent, without consideration,

save and except love and affection, shall be conclu-
sively presumed to have been made in contemplation
of death.''

The view we have taken of the statute makes it
unnecessary for us to determine whether the evidence
tends to prove that the transfers were intended to
take effect at or after the death of the grantor.

There being some evidence tending to prove that
the conveyances were made in contemplation of the
death of the grantor, the decision is sus-
2. tained by sufficient evidence. No reversible
error is shown.

The judgment is affirmed.

Caldwell, C. J., Ibach, Dausman, Hottel and Bat-
man, JJ., concur.