**SPITZ, ESTATE OF, In re**

Probate Court, Cuyahoga Co.

No. 254220.   Decided June 6, 1939.

Davies & Eshner and Sydney A. Davies, Cleveland, of counsel, for exceptors.

D. K. Larrimer, Columbus, for Tax Commission of Ohio.

## OPINION

By BREWER, J.

Frank M. Spitz died testate on December 5, 1937. His will was admitted to probate in this court on June 17, 1937, and the Central National Bank of Cleveland and Margaret Spitz were appointed co-executors of the will. The application for determination of the inheritance tax was filed April 14, 1938, and the taxes were determined on July 1, 1938; and to this determination of tax the co-executors filed exceptions on August 21, 1938. The exceptions are taken on the following grounds:

"1. That the valuations of the preferred and common stock of the Brown Fence & Wire Company, belonging to said estate, are erroneous, because these stocks were appraised for the purposes of the inheritance tax for prices for which small lots were being sold on stock exchanges at the time of death; that these stocks were very inactive on the stock exchanges and the number of shares included in the estate of decedent represents approximately four times the amount sold in both Chicago and New York Curb Exchanges during the entire month preceding the decedent's death; and that as a consequence the number of shares belonging to the estate could not be placed on the market without seriously depressing the the price, and that investigation has shown that the prices fixed by the executors in their application for determination of the inheritance tax are the approximate amounts which could be realized from such a sale.

2. That the inclusion of the transfer of common stock of the Brown Fence & Wire Company to Margaret A. Spitz on December 20, 1935, as a gift made in contemplation of death was erroneous because said transfer was not made in contemplation of death but was made for the purpose of effecting a saving in income taxes.

3. That the legatee, Richard W. Taylor was recognized by the decedent as an adopted child for twenty-seven years prior to his death, since said Richard W. Taylor was eleven years old; and that as a consequence in the determination of the inheritance tax, said Richard W. Taylor was entitled to an exemption of $3,500 and that the tax on his succession should have been computed at the rates of one and two per cent rather than at the rates of seven and eight per cent.

4. That the liabilities for the Federal income taxes of the decedent have not been fully included in the determination of the tax; that since the filing of the application for determination of the inheritance tax the United States Internal Revenue Department has assessed an additional income tax for the calendar year of 1936 in the amount of $4,521.51, and that the U. S. Internal Revenue Agent in charge has indicated that he will disallow a deduction taken on the income tax return filed for the four months and sixteen days during which Frank M. Spitz was alive, and that such allowance will result in an additional income tax for that period of $4,663.95.

The first exception, which is directed to the valuation of the preferred and common stocks of the ▮▮▮▮▮ ▮ Brown Fence & Wire Company, belonging to the estate of Frank M. Spitz, deceased, has been settled by the decision of the Court of Appeals of Cuyahoga County, Ohio, which has just been rendered in the case of "In re Estate of Oliver W. Loomis, Deceased," without written opinion. In the Loomis case the decedent died owning a large block of the stock of The National Malleable & Steel Castings Company, which was appraised for the purpose of the inheritance tax at its market value on the day of the death. Exceptions were filed to the appraisement and these exceptions were overruled by this court. From this decision an appeal was taken to the Court of Appeals, with the result that the decision of this court was affirmed by the Court of Appeals.

This decision is in accordance with the practice of the courts of the state of Ohio and follows the ruling in the case of "In re Estate of Leonard Smith, 23 Ohio Law Reporter 526, which is as follows:

"The proper procedure for a county auditor, in fixing inheritance taxes on securities as of accrual day, is to adopt the quotations for such securities for said day as shown by the report of the stock exchange on which said securities are traded in from day to day, notwithstanding it might happen that the throwing of a large block of a particular stock on the market at one time might depress the price at which it could be sold."

In view of the decisions just mentioned, heretofore rendered, as aforesaid, there can be no point in discussing the principles on which they rest; but for the sake of the record in this court, I desire to cite from a decision rendered by the Supreme Court of the neighboring state of Kentucky. It is particularly because the facts of this Kentucky case are so similar to those of the case at bar, and also because the doctrine laid down by the Kentucky court and the rule followed by the Ohio court are so closely in accord, that I desire to cite this decision. The Kentucky case is: Bingham's Admr. v Commonwealth, 196 Kentucky Reports, 318. Briefly, Mrs. Bingham owned very large blocks of stock in The Standard Oil group of corporations, which it is agreed had a recognized market value at the time of her death. These stocks were appraised at this market value. It was argued by counsel for the defendants that although such appraisement was fair for small blocks of such securities, that this method could not be justly or legally employed in appraising the large blocks owned by the Bingham estate, because it was shown without contradiction such quotations are based upon transactions involving only from ten to one hundred shares. Whereas, Mrs. Bingham owned thousands of shares, which could not have been dis-

posed of at the quoted prices within six months or any reasonable period after Mrs. Bingham's death. The court's answer to this argument is summed up in Paragraph 5 of the syllabus of its opinion.

"5. Taxation — Appraisement of Stocks and Bonds. Large blocks of stocks, bonds and securities customarily traded in upon the open market in New York City and elsewhere, are to be appraised by the same method as are small blocks thereof; and, it being conceded that blocks of from ten, to one hundred shares are the units in which such stocks are customarily traded in and that the fair cash value of such units on the taxing date is proven by the established market price, of that date, it follows that all of such securities as were owned on that date, regardless of the number or total value thereof, were properly appraised at such market price, since articles of property must be appraised in such units as ordinarily traded in and not in the blocks or masses in which they happen to be owned."

The second exception is directed to the assessment of the inheritance tax against the transfer of certain stocks by Frank M. Spitz to his wife, Margaret Spitz, during his lifetime. Inasmuch as the transfer was made within two years from the donor's death, under §5332-2, GC, the transfer is presumptively taxable, and the exceptors in order to rebut this presumption offered the following facts: On December 20, 1935, Mr. Spitz gave to his wife eight thousand shares of the common stock of the Brown Fence & Wire Company. Subsequent to the making of this gift the common stock of said company was split in the proportion of two for one, and the eight thousand became sixteen thousand shares. The evidence shows that Mr. Spitz for a long time had suffered from diabetes but that aside from this he enjoyed good health. He died suddenly on May 5, 1937, while engaged in playing golf. The cause of his death was diagnosed as coronary thrombosis, a very serious heart trouble, which we are assured by the medical experts often strikes fatally, without warning. Death came to Mr. Spitz without warning. The exceptors called in two physicians who qualified as expert witnesses. One of them Dr. W. L. Hobart, after having testified that Mr. Spitz had diabetes but no heart trouble, was asked:

"Would you say, Doctor, that his diabetes directly affected his heart, or might cause a coronary thrombosis?"
"A. Well, it is quite possible.
"Q. From your examination what would you say, that the coronary thrombosis was a result of diabetes at all?
"A. Well, I would be on the fence. It is a possibility, but not at all absolutely positive."

The testimony further shows that Mr. Spitz was for a long time under treatment for diabetes and at the time of his death he was a patient of Dr. Henry J. Jahn, a specialist in the treatment of that disease.

It was the practice of Mr. Spitz during the course of many years to maintain an equal division of his estate between Mrs. Spitz and himself. He made a gift of the stock of the Brown Fence & Wire Co. to his wife on December 24, 1920, and another on November 11, 1923. The records show that in 1928 Mrs. Spitz held as a result of these gifts 1,250 shares of the preferred and 1,420-76/100 of the common stock of the Brown Fence & Wire Company. Upon reorganization of the capital structure of the Brown Fence & Wire Company in 1929, Mrs. Spitz received in lieu of the old stock, preferred and common just mentioned, 15,601 shares of "A" stock, and 18,479 shares of "B" stock. The value of these stocks was not given but it was testified that the value of these stocks so transferred to Mrs. Spitz was reported to the Federal Government for the purpose of the Capital Gains Tax as $198,088.37, and that these stocks were sold for $956,-336.21. The capital gain thereon was

reported to the Federal Government in the sum of $758,247.84.

The aforementioned stocks were sold by Mr. Spitz and the proceeds of the sale were invested by him for the benefit of his wife. Mr. Spitz managed all of his wife's business affairs. She had little if any knowledge of what she owned and of what was bought and sold in her name. It was, in fact, the practice for Mr. Spitz to buy securities intended for Mrs. Spitz' account and to sell in her behalf in his own name, and to transfer the money or securities resulting from these transactions to her on delivery from the broker. In December, 1935, Mr. Spitz, as heretofore mentioned, transferred to Mrs. Spitz eight thousand shares of the Brown Fence & Wire Co. common stock. Mrs. Spitz, it appears from the reocrd, owned some foreign bonds which had suffered a great decline in their market values, and the express purpose of the gift was to enable Mrs. Spitz to sell her foreign bonds and offset the loss that would be incurred by the sale with profit that would accrue on the sale of the stock comprising the gift made in December, 1935.

Testimony was given to the effect that Mr. Spitz at the time of making the gift of stock to Mrs. Spitz on December 20, 1935, declared that, "he was going to have it transferred to her to save income tax." In order to substantiate this claim evidence was produced at the trial to show that the transfer did actually result in a considerable saving of income tax.

The court is satisfied that the facts and circumstances concerning the transfer of the stock are sufficient to show that the transfer constituted a valid gift **inter vivos**. It is, therefore, considered that a discussion of the validity of this gift is unnecessary.

It being conceded that the transfer of stock constituted a valid gift, that the donor had relinquished all dominion and control over the subject matter of the gift, did the court err in concluding that the transfer of December 20, 1935. was a taxable succession to the decedent's widow Margaret A. Spitz?

Inasmuch as the facts of the case at bar show that the transfer of December 20, 1935, was made without consideration, the case comes under the provisions of §5332, ¶3, GC:

"3. When the succession is to property from a resident or to property within this state from a non-resident, by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property:

(a) In contemplation of the death of the grantor, vendor, assignor, or donor, or

(b) Intended to take effect in possession or enjoyment at or after such death."

In §5332, ¶3, GC, the court must take into consideration the statutory definition of the phrase, "contemplation of death." This phrase, "contemplation of death," defined in §5331, ¶5, GC, means that "expectation of death which actuates the mind of a person on the execution of his will."

It is always exceedingly difficult to prove that property has been transferred in contemplation of death. The only persons whose relations with the decedent have been sufficiently intimate to afford them an opportunity to know his intentions are usually those whose interest would be served by testimony to the effect that the gift was not made in contemplation of death. And the state is, therefore, compelled to rely upon conclusions derived from the testimony of witnesses who are interested in disproving its contention. The existence of such a situation seems to be particularly true in this case, in which one of the witnesses is not only counsel for the exceptors, but was the decedent's legal counsel before his death, and another was his tax advisor and consultant for many years prior to his death.

It might be well to observe that the meaning of the words, "contemplation of death," under the Ohio law differs from that of other states.

The meaning of the words as defined by the courts of Kentucky is this: Contemplation of death is a present apprehension of death arising from some existing condition or impending peril that would reasonably create a fear that death was near at hand. Commonwealth ex rel v Fenley, 189 Kentucky Reports, 480.

"Contemplation of death" has been defined by the courts of Pennsylvania, "as the expectation of death which arises from such bodily and mental conditions, irrespective of the cause in any particular case, which prompts persons to dispose of their property to those they deem entitled to their bounty." Conway's Estate, 120 N. E. 717.

In the case of People v Burkhalter, 247 Ill. 600, it is declared that the contemplation of death must be the impending motive without which the conveyance could not have been made, in order to subject the transfer of property to inheritance taxes. As a contrast to the foregoing definitions, the meaning of "contemplation of death" as defined by the Ohio law is again stated as that "Expectation of death which actuates the mind of a person on the execution of his will." Hence, it is hardly necessary to point out that there is an important distinction between the meaning of those words as defined by the Ohio statute and the commonly accepted definition of the same, in that under the Ohio statute a gift may be made in contemplation of death when there is no expectation or fear of impending death. If the donor makes his gifts in circumstances such as to indicate that he is thereby doing what he might have done by will, the transfer comes within the provisions of the statute.

Mr. Spitz for a long time suffered from diabetes. At the time of his death he was under the care of two physicians, one a specialist. In the face of these facts it can hardly be maintained that he enjoyed good health. Even though there may be a difference of opinion among medical experts as to whether or not diabetes is a cause of coronary thrombosis, still we do know it to be a fact that diabetic patients often do die of coronary thrombosis. In other words, a person suffering from diabetes is in greater danger of dying from an attack of coronary thrombosis than one that is not. Hence, it is fair to conclude that a person who is in such a bodily condition as to require constant attention of a specialist is not in good health; that a person who is a chronic sufferer from a serious and probably incurable disease can hardly expect to live his normal life of expectancy; and that it is reasonable to presume that these facts must have had some influence on Mr. Spitz in connection with his transfer of stock.

Another fact that is ground for the inference that the gift of stock was a testamentary disposition is that in 1935, the United States Congress amended the Federal Gift Statute. This amendment went into effect on January 1, 1936. It was only eleven days before this amendment became a law, to-wit: on December 20, 1935, that Mr. Spitz transferred the 8000 shares of stock to his wife. In determining what was the impelling motive of the transfer, there is probably no better guide in making such determination, aside from the statutory definition of contemplation of death, than the rule laid down in **Tax Commission v Parker, 117 Oh St 215,** which is that:

"The controlling fact in determining whether a transferor made a transfer of property in contemplation of death is whether the transfer was to distribute or partially distribute his estate or simply do an act of generosity or kindness."

The evidence shows that Mr. Spitz frequently made large gifts of stock to his wife; that it was his deliberate purpose to maintain an equal division of his estate between his wife and himself, and that the fulfillment of this purpose required frequent adjustments and transfers to his wife.

Let us consider whether or not, as the exceptors earnestly contend, that the saving of income tax was the sole

motive of the transfer of stock on December 20, 1935. It is true that the saving of income taxes is a matter associated with life. But is it not equally true that the decedent in dividing his estate with his wife, as he did, might thereby intend to save inheritance taxes? Such a purpose would, of course, be a matter associated with death.

The counsel for the exceptors have cited several cases in support of their claim that a transfer made to reduce income taxes is not a gift made in contemplation of death. These cases are all Federal cases. The counsel of The Tax Commission points out, however, that the court of Ohio have never considered the evasion of income taxes as a motive so connected with life as to make it a ground for escape from liability to the inheritance tax. Bearing on this question counsel cites a Federal case, Farmers Loan and Trust Company v Bowers, rendered by the District Court of the United States for the Southern District of New York, 68 Fed. (2d) 916, Page 923:

"There were two or more motives for transfer established, each of which substantially induced the making of the gift, and since it is impossible to determine any one single dominating, controlling, or impelling motive, the taxpayer has failed in sustaining the burden of proof. Where the donor makes a gift to accomplish a purpose to be effective during his lifetime and at the same time to accomplish a purpose to be effective at his death, each one of which substantially induces the transfer and is part of the inducing element going into making the gift, each of the motives becomes an inducing, actuating, and determining cause, therefore each is controlling and each is compelling."

This cause was appealed to the Circuit Court of Appeals, Second Circuit, New York; and Paragraph 2 of the syllabus of the opinion rendered in said case, 98 Federal Reports, 2d Series, Page 794, has this to say in respect to the words, "contemplation of death."

"A transfer is made in contemplation of death within meaning of estate tax law if motive of avoiding estate taxes plays a substantial part in making the transfer, although that motive is accompanied by motive to escape other kinds of taxation as well."

Paragraph 4 of the syllabus of said case also states a principle which, I am persuaded, is applicable to the case at Bar.

"Statute taxing transfers in contemplation of death is aimed at reaching substitutes of testamentary dispositions and preventing evasions of estate taxes."

It seems to the court that the transfer of stock by Mr. Spitz was just as much an attempt to save inheritance taxes as to save income taxes and that the fact that Mr. Spitz was accustomed to maintain an equal division of his estate between himself and his wife, which necessitated frequent transfers of large amounts of property combined with the other facts that have been heretofore discussed is sufficient to support the inference that the transfer of stock on December 20, 1935, was a partial disposition of his estate and not merely an act of generosity.

The cases which the exceptors cite in support of their claim that the transfer was an act of generosity do not apply to the case at Bar, for the reason that in all of these cases the donors gave away property which had not belonged to them, but which had come to them by will, and in each case the property was transferred just as soon as possible after the vesting of title in the donor. In the case of In re Estate of Elizabeth W. Donnell, 28 N. P. (N.S.) 211, the motive of the gift was to right what the donor considered as a moral wrong. In the Burton case, 27 N. P. (N.S.), 366, and see also 37 Oh Ap 183,

the donor's father-in-law on the death of her husband, expressed his intention of bequeathing the share of his deceased son to his daughter-in-law (the donor) and she at that time declared that if such disposition were made she would refuse to accept the bequest for herself and would immediately pass it on to her children. This she did as soon as possible after she had secured title to the property. In this case the donor also had a feeling of resentment for wrong done her husband by her father-in-law, and on this account also refused to accept a benefit for herself. In **Tax Commission v Lamson, 43 Oh Ap 510,** the decedent's husband, a beneficiary under his wife's will, on hearing of the bequest, immediately declared his intention to renounce it and transfer the bequest to his children, immediately on receiving it. In each of these cases there was a distinct determination on the part of the donors not to accept bequests of property made to them, and not to take any benefit therefrom.

There is no similarity between the case at Bar and these cases cited by the exceptors. Margaret Spitz, the wife of the donor, was the only person who could be considered as the natural object of his bounty. The decedent gave her half of his estate. The gifts so made were not given to relieve a need, nor to right a moral wrong. It seems to the court that the exceptors have failed to prove that the dominating motive of the decedent in making the gift was to save income taxes. It seems to the court that the motive to save inheritance taxes was equally strong and compelling; and that the exceptors have failed to sustain the burden of proof required by the statute to overcome the presumption that the transfer of the stock to Mrs. Spitz is taxable. The exceptions will, therefore, be overruled.

As to the third exception, the court is satisfied on the evidence, that the legatee, Richard W. Taylor, should be given the status of a recognized child, which will entitle him to an exception of $500.00 and to 5% as the initial rate of taxation.

The fourth exception is a matter that would be presented to the court in better form by an application for redetermination of inheritance tax, and this procedure is recommended to the exceptors.