**AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, Executor of the Estate of Mae L. Roberts, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 18636.**

United States Court of Appeals, Seventh Circuit.

March 18, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Richard W. Perkins, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Meyer Rothwacks, Ernest J. Brown, Attys., Tax Division, Department of Justice, Washington, D. C., for defendant-appellant; Stanley B. Miller, U. S. Atty., of counsel.

Thomas J. Young, Douglass R. Shortridge, William F. Welch, Indianapolis, Ind., for plaintiff-appellee; McHale, Cook & Welch, Young & Young, Indianapolis, Ind., of counsel.

Before KILEY and CUMMINGS, Circuit Judges and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior Judge.

This is an appeal by the government from an unfavorable decision in a tax refund suit. The issue before the district court was whether a decedent's transfer of shares of stock in trust, made twenty-six months prior to her death, was a transfer in "contemplation of death" requiring that the value of such stock be included in decedent's gross estate. 26 U.S.C. § 2035. In a memorandum decision, the district court found that the decedent's transfer of assets to the irrevocable trust was not in contemplation of death and that the deficiency assessment made by the Commissioner was erroneous. The district court entered judgment in favor of plaintiff, decedent's estate in the amount of $113,834.23 plus statutory interest. The precise issue before this court is whether the district's court's findings of fact are clearly erroneous.

The facts, many of which were stipulated, are fully set forth in the thorough memorandum of the trial judge. The decedent Mae L. Roberts was a widow, 72 years of age at the time of the transfer in question and lived with her only child, an invalid daughter. In 1961 her income consisted of dividends from 1600 shares of stock of Empire Life and Accident Insurance Company and Social Security payments in the amount of $73.50 per month. She also received Social Security payments for her daughter in the amount of $66.80 per month. The total yearly payments on the dividends for 1961 was $6400.00 and for both Social Security accounts the year's total was

---

* Seior Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

$1,683.60. Essentially, her only assets were the 1600 shares of stock.

In April of 1962, decedent, then age 72, sold 686 shares of her stock and with the proceeds purchased an annuity policy from Prudential Life Insurance Company at a cost of $100,000. This policy was a "straight" annuity with no minimum guaranteed number of payments or any provision for return of principal in the event of her death within any given time. She also placed 714 shares of stock in an irrevocable trust with American Fletcher National Bank as Trustee for the benefit of Allie Mae, her invalid daughter. She retained the remaining 200 shares. Decedent paid a gift tax of $26,437.50 on this transfer. The trust provided that the income would be accumulated during the decedent's life for the benefit of her daughter. The trustee was empowered by the trust to pay out of the corpus of the trust at any time such amounts as it might deem advisable for the benefit of decedent's daughter. The trust gave the trustee the usual power to sell assets, but provided that in the event the trustee determined to sell any of the stock that such stock should be first offered to decedent's brother and his daughters and sons-in-law. After this transfer and the purchase of the annuity her income amounted to $11,879.60 per year of which $2,622.82 was subject to federal income taxes.

The case was tried to the court without a jury and upon full consideration of the facts, the district court found that decedent's transfer of assets to the irrevocable trust on April 25, 1962 was not "in contemplation of her death," and the deficiency assessments were therefore erroneous. In support of that conclusion the district court set forth a number of relevant facts including the following: "The decedent was seventy-two (72) years of age on April 25, 1962 but appeared many years younger and was in excellent health. Her life expect-

ancy on such date was nine and fifteen hundredths (9.15) years. The annuity which decedent purchased was what is commonly called a 'straight' annuity with no minimum guaranteed number of payments or any provision for return of principal in the event of her death within any given time. She chose this annuity for the reason that she believed she would live many years and felt that it would be economically advantageous to her over other 'guaranteed payment' annuities available to her. This purchase of the annuity and gift in trust were one integral transaction."

The district court thus concluded, "The clear intention of decedent in making the gift in trust, in connection with the purchase of the annuity, was associated with life motives and was not in contemplation of death."

█ The government agrees that the ultimate finding of the trial court was one of fact to which the clearly erroneous standard of review applies. Rule 52(a) Fed.R.Civ.Proc.; Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The government argues, however, that the evidence before the district court, particularly the fact that decedent executed a will as part of the same "package plan" containing a pourover provision relating to the trust in question, clearly establishes that the transfer was one in contemplation of death and that therefore the district court findings are "clearly erroneous." It is well established, however, that the simultaneous execution of a will is insufficient to overcome clear evidence of living motives for the gift. See 4 Rabkin & Johnson, Federal Income Gift & Estate Taxation, § 52.03, p. 5227.

The government also argues that § 2035 of the Internal Revenue Code, which provides for the inclusion in gross estate of the value of transfers made in contemplation of death, applies to all transfers prompted by the thought of

death and made as a substitute for testamentary disposition or made with the purpose of avoiding death taxes. In support of its position, the government relies on this court's decisions in Flack v. Holtegel, 93 F.2d 512 (7th Cir. 1937); English v. United States, 270 F.2d 876 (7th Cir. 1959); Purvin v. Commissioner of Internal Revenue, 96 F.2d 929 (7th Cir. 1938).

These cases do not establish the proposition urged by the government. In each of these cases the facts were much different than those in this case, and significantly, in each case the trier of fact found that the transfer in question was in contemplation of death. Whether a taxpayer's motives were "in contemplation of death" is a question of fact in each case. Allen v. Trust Company of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946). In this case the trier of fact found that the transfer was *not* in contemplation of death. The government's theory that this was a substitute for a testamentary disposition is further refuted by the fact that under the trust agreement the trustee had the power to invade the trust corpus for the benefit of the daughter.

 It is irrelevant that some of the purposes accomplished by the decedent in her trust could have been accomplished by will, thereby increasing the tax burden on the transfer. A taxpayer is not obligated to arrange his affairs to insure the greatest yield possible for the tax gatherer. "Giving up property during one's life in order to incur the gift tax rather than the estate tax is simply exercising the option to choose between the two taxes which Congress has created." Lowndes and Kramer, Federal Estate and Gift Taxes (2d Edit., 1962) § 5.7 at page 69.

The findings set forth in the memorandum of the district court are supported by the record and certainly are not clearly erroneous. The judgment of the district court is affirmed.