INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellant (Petitioner Below),

v.

ESTATE OF Virgil D. BALDWIN, Appellee (Respondent Below).

No. 49T10–9412–TA–00279.

Tax Court of Indiana.

June 23, 1995.

Pamela Carter, Atty. Gen., Kathryn Symmes Hall, Deputy Atty. Gen., Indianapolis, for appellant.

Jeffrey K. Baldwin, Danville, for appellee.

FISHER, Judge.

Virgil D. Baldwin (Baldwin) died on December 11, 1991. On May 17, 1993, Mary K. Schroeder and Eugene N. Schroeder (the Schroeders), as personal representatives of Baldwin's Estate (the Estate), filed a petition to waive the filing of an Indiana Inheritance Tax return with the Marion County Superior Court, Probate Division (the Probate Court). On February 22, 1994, the Probate Court issued an order stating that the Estate did not owe Indiana Inheritance Tax and, therefore, it was not required to file an Indiana Inheritance Tax Return under IND.CODE 6–4.1–5–8. The Indiana Department of State Revenue, Inheritance Tax Division (the Department), petitioned the Probate Court for a rehearing on May 5, 1994, alleging the Pro-

bate Court erred in excluding from the taxable estate an *inter vivos* transfer of assets made by Baldwin less than a year before his death. On August 25, 1994, the Probate Court held a hearing on the Department's petition, which it later denied. The Department now appeals to this court.

## ISSUE

Whether the Probate Court erred in finding that Baldwin's transfer of assets within a year of his death was not "in contemplation of death" under IND.CODE 6–4.1–2–4(a)(2).

## FACTS AND PROCEDURAL HISTORY

In 1982, while recovering from surgery, Baldwin moved in with his daughter and son-in-law, the Schroeders. Over the course of the next eight years, Baldwin suffered a series of microstrokes which prevented him from moving back home alone.

By August of 1990, Baldwin's health had deteriorated to the point where he had difficulty eating and drinking. Upon the direction of his physician, a feeding tube was inserted into Baldwin's stomach, which remained until his death in 1991. While Baldwin's health improved after the feeding tube was inserted, he required constant, round-the-clock care. Eugene Schroeder, a retired engineer, was Baldwin's primary caregiver.

Anticipating the day that they would no longer be able to care for Baldwin, the Schroeders investigated the possibility of placing Baldwin in a nursing home. During their investigation, however, the Schroeders learned that Baldwin's insurance policy would only cover one year of nursing home care. After that first year, Baldwin's assets would be applied to his nursing care expenses.

On December 31, 1990, Baldwin revoked his previously created living trust and transferred all of his assets, valued at $215,000.00, to the Schroeders.[1] This transfer would enable Baldwin to be eligible for Medicaid coverage in approximately 30 months.[2]

On December 11, 1991, Baldwin died unexpectedly from complications of pneumonia. He was eighty-seven.

## STANDARD OF REVIEW

■  The Indiana Tax Court acts as a true appellate tribunal when it reviews a probate court's final determination concerning the amount of Indiana inheritance tax due. IND.CODE 6–4.1–7–7; *Indiana Dep't of State Revenue v. Estate of Puschel* (1991), Ind. Tax, 582 N.E.2d 923, 924. On appeal, the court will not reweigh the evidence nor judge the credibility of witnesses, but will affirm the probate court's judgment upon any legal theory supported by evidence introduced at trial. *Estate of Hibbs v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 636 N.E.2d 204, 206.

## DISCUSSION AND ANALYSIS

■  In Indiana, transfers of property made in contemplation of death are subject to inheritance tax. I.C. 6–4.1–2–4(a)(2). "A transfer is presumed to have been made in contemplation of the transferor's death if it is made within one (1) year before the transfer-

1. Baldwin did, however, retain interest in a small bank account. On the date of his death, Baldwin's bank account was worth approximately $3700.00. *Record of Proceedings* at 6.

2. The Medicaid program, established by Congress in 1965, provides medical assistance to persons who are unable to meet the expenses of health care. *See* 42 U.S.C. § 1396 *et seq.; Harris v. McRae* (1980), 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794. Currently, Medicaid is the principal payor of nursing home care in the United States. *Indiana Dep't of Pub. Welfare v. Lifelines of Indianapolis Ltd. Partner-*

*ship* (1994), Ind.App., 637 N.E.2d 1349, 1351, *trans. denied.*

States participating in the Medicaid program must establish "reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan ..." 42 U.S.C. § 1396a(a)(17). To be eligible for Medicaid in Indiana, an individual's total equity value of all nonexempt personal property cannot exceed $1,500.00 on the first day of each month. IND. CODE 12–15–3–1; 405 I.A.C. 2–3–15. Prior to July 1, 1988, an individual who, for purposes of qualifying for Medicaid, transferred property with an uncompensated value in excess of $12,-000.00, was Medicaid ineligible for five years

or's date of death. However, the presumption is rebuttable." I.C. 6–4.1–2–4(b).

A transfer of property to the natural objects of one's bounty is a transfer made in contemplation of death if it is prompted by an expectation of death. *Conway's Estate v. State* (1918), 72 Ind.App. 303, 315, 120 N.E. 717, 720. An expectation of death need not be imminent, however, nor need it be the general expectation of death which all human beings entertain. *Id.* Rather, it must be "an expectation of death which arises from such bodily or mental conditions, irrespective of the cause in any particular case ..." *Id.*

To determine whether a transfer was prompted by an expectation of death, courts must determine the transferor's state of mind toward death. *Indiana Dep't of Revenue v. Estate of Flanders* (1980), Ind.App., 408 N.E.2d 172, 175. To accomplish this task, courts have "employ[ed] two inextricably related points of analysis: (1) objective facts from which state of mind may be inferred, and (2) subjective motives for the transfer: testamentary motives (distribution in anticipation of death and/or for the purpose of avoiding death taxes) or living motives (distribution for purposes associated with life)." *Id.* Nevertheless, the objective facts may be overcome by evidence of subjective motives. *Id.* (citing *U.S. v. Wells* (1931), 283 U.S. 102, 117–18, 51 S.Ct. 446, 451–52, 75 L.Ed. 867; *American Fletcher Nat'l Bank and Trust Co. v. U.S.*, 441 F.2d 470, 472 (7th Cir.1971)).[3] Thus, a transfer seemingly made in contemplation of death may be rebutted by proof that the transferor's motive for the transfer was life-related and not testamentary. *Id.*

The Department maintains that Baldwin's transfer is clearly in contemplation of death. First, it cites five objective factors to support its position:

1) Baldwin transferred his assets less than a year before his death;

2) Baldwin was in poor health at the time of the transfer;

3) At the time of transfer, Baldwin was either 86 or 87 years of age;

4) While Baldwin had a history of making gifts to the Schroeders, the previous gifts were approximately ten times smaller than the transfer at issue, and never constituted Baldwin's entire estate; and

5) The transfer at issue was made to the objects of Baldwin's natural bounty—his daughter and son-in-law, the Schroeders.

*See Brief of Appellant* at 9–13. Second, the Department argues that the testimony presented at the hearing indicates that Baldwin had a motive to qualify for Medicaid: to avoid the dissipation of his assets by nursing home expenses. This "ultimate motive," the Department states, constitutes a testamentary motive because the transfer would give effect to Baldwin's intended testamentary disposition. In other words, Baldwin wanted his heirs, and not the nursing home, to receive his assets.

The Probate Court found, however, that the Estate presented evidence and testimony from which it could infer that Baldwin did not have an expectation of death but, rather, a living motive for his transfer. Specifically, the Probate Court found:

1. On December 31, 1990, Virgil D. Baldwin made a gift of approximately $215,000 to his daughter and her husband.

2. Mr. Baldwin died on December 11, 1991.

3. Mr. Baldwin's primary motive for making the gift was to make himself eligible to receive public assistance.

4. Mr. Baldwin expected to live for several more years in spite of his advanced age and poor health.

5. The statutory presumption of gift in contemplation of death has been rebutted.

*Record of Proceedings* at 69.

While the Department's argument is very convincing, this court's deferential standard

---

after the transfer. *See* 405 I.A.C. 2–3–1. 42 U.S.C. § 1396p(c), however, governs those transfers made on or after July 1, 1988. Accordingly, when Baldwin made his transfer in 1990, he was subject to a 30 month ineligibility period. *See* 42 U.S.C. § 1396p(c).

**3.** As the Court of Appeals explained in *Flanders,* the use of pre–1976 federal case law dealing with gifts in contemplation of death is relevant to this court's determination:

26 U.S.C. (I.R.C.1954) § 2035 (amended 1976) and its fore-runners presume gifts made within three years of death are made in contemplation of death, but such presumption is rebuttable. While the 1976 Tax Reform Act amended I.R.C. § 2035 to be a conclusive presumption, pre–1976 federal case law is relevant ...

*Flanders,* 408 N.E.2d at 176, n. 4.

of review requires that the Probate Court's judgment be affirmed. Indeed, the record contains evidence from which the Probate Court could infer that Baldwin's motive for the transfer, to qualify for Medicaid, was associated with reasons for his continued living rather than an expectation of his death. Consequently, this court cannot say that the Probate Court's findings were clearly erroneous, nor can it say that the Probate Court's judgment that Baldwin's motive for his transfer was life-related is unsupported by evidence in the record. *See Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 666; *Estate of Hibbs,* 636 N.E.2d at 206. The judgment of the Probate Court is AFFIRMED.