Walter M. DUNKERSON, Petitioner,

v.

INDIANA DEPARTMENT OF
REVENUE, Respondent.

No. 41T05–8612–TA–00054.

Tax Court of Indiana.

Sept. 24, 1987.

Edward B. Hopper, II, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen., Marilyn Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Walter Dunkerson appeals the final determination of the Indiana Department of Revenue, denying his protest of taxes assessed against him under IC 6–2.5–9–3 and IC 6–3–4–8(d). The department assessed taxes against the petitioner, as the responsible officer of Route 31 Service Plaza, Inc., to recover the corporation's unpaid balance of sales and withholding taxes. The petitioner filed an original tax appeal and a petition for injunction in this Court. The injunction was granted and a trial on the merits followed.

The question presented by this case is whether the petitioner is under a duty to remit sales and withholding tax to the department.

The petitioner was president, a shareholder, and a director of Route 31 since its incorporation in 1965. Since Route 31 was in financial difficulty, the petitioner was urged by Route 31's accountant to seek outside investors. In August 1979, Route 31 and Knightsbridge Realty & Mortgage Co., Inc. entered into an agreement whereby Knightsbridge would provide an influx of capital and management assistance in return for fifty percent of Route 31's stock. When the agreement was made, the petitioner was president of Route 31, his wife, Irene Dunkerson, was secretary-treasurer, and his brother-in-law, Carl Hirschle, was vice-president. The president of Knightsbridge, Ned Hansen, was never made an officer of Route 31, although he was in the Route 31 offices on a regular basis and exercised substantial managerial authority until April 1981. On April 9, 1981, the petitioner filed a petition for bankruptcy on behalf of Route 31. The department billed

petitioner for Route 31's unpaid sales tax under IC 6–2.5–9–3 for the periods ending July 31, 1980 and April 30, 1981, and for the unpaid withholding tax under IC 6–3–4–8(d) for the same periods.

IC 6–2.5–9–3 provides:

An individual who:

(1) is an individual retail merchant or is an employee, officer, or member of a corporate or partnership retail merchant; and (2) has a duty to remit state gross retail or use taxes to the department of revenue; holds those taxes in trust for the state and is personally liable for the payment of those taxes to the state. If the individual knowingly fails to remit those taxes to the state, he commits a Class D felony.

The pertinent part of IC 6–3–4–8(d) provides:

(d) ... [A]ny amount deducted or required to be deducted and remitted to the department under this section shall be considered to be the tax of the employer and with respect to such amount he shall be considered the taxpayer. In the case of a corporate or partnership employer, every officer, employee, or member of such employer, who, as such officer, employee or member is under a duty to deduct and remit such taxes shall be personally liable for such taxes, penalties and interest.

To decide whether the petitioner is a responsible officer, that is, under a duty to remit, the statutes are indistinguishable.

An officer is personally liable under both statutes if he has a duty to remit those taxes to the department. The case law in Indiana which addresses the issue is limited to *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301. Here the Court of Appeals found a president of a corporation personally liable for its unpaid sales and use tax. Van Orman, who was the president, general manager, and majority shareholder, admitted that under ordinary circumstances he would be a responsible officer under the statute. He argued that due to the effects of a debilitating cerebral hemorrhage, he was incapacitated and therefore relieved of his legal duty to remit

the tax. To this end, Van Orman tried to establish that he had no control over the management of the corporation during the relevant time period. The Court found:

The evidence, nonetheless, indicated that, during the relevant time, Van Orman *continued* as president, general manager and majority shareholder of Van Orman Enterprises, Inc. During this time period, he went "down (to the Hotel Van Orman) maybe once or twice in a couple of months," signed "at the most three or four" checks a year and withdrew a sizeable amount of food and beverage from the corporation for his personal use. The day-to-day operations of the hotel were run in his absence by the department heads, who had been hired by him. *Id.* at 1304 (emphasis added) (footnotes omitted).

The Court refused to reweigh the evidence and affirmed the trial court's findings, stating:

In order for the court to have found for the State, it must have concluded that, despite Van Orman's medical problems, the exercise of the authority of his corporate office was a matter within his discretion and subject to his will. *Id.*

In other words, the court found that this evidence supported a finding that Van Orman still had some control over the management of the corporation. The Court continued:

He did participate periodically in the life of the corporation and apparently made no attempt to legally shift the responsibilities of his corporate office to others by the naming of an acting president or by the temporary appointment of a guardian.... [W]e are constrained to agree with the court's conclusion that Van Orman's medical problems did not relieve him of his legal "duty to remit such taxes." *Id.* at 1304–05 (citation omitted).

As was Mr. Van Orman, the petitioner is presumed to have been under a duty to remit taxes under ordinary circumstances.

■ The petitioner argues that circumstances beyond his control relieved him of

such duty. He asserts that he surrendered control of Route 31 under the terms of the contract executed by Knightsbridge and Route 31. However, nothing in that contract supports such a contention. Knightsbridge received only fifty percent of Route 31's stock under the contract. Knightsbridge's assumption of some of Route 31's management functions does not mandate a finding that the petitioner lost control of Route 31. Route 31 retained the same officers. No members of Knightsbridge ever became officers of Route 31. The petitioner continued to devote all of his time to the operation of Route 31; by his own testimony, he was available "seven days a week, 24 hours a day."

Furthermore, the petitioner was authorized at all times to sign checks. The petitioner listed on Route 31's bankruptcy petition two banks at which Route 31 maintained accounts. At American Fletcher National Bank, Route 31 maintained a trust fund account, a payroll and a general account for which the petitioner, Ned Hansen, Virginia Law, and Betty Clark were listed as signatories. At Indiana National Bank, Route 31 maintained another general account; only the petitioner and Virginia Law were authorized to make withdrawals from this account.

The petitioner, Irene Dunkerson, and Carl Hirschle all testified that the petitioner was president "in name only." Irene Dunkerson characterized petitioner's position with Route 31 as one who was "just sort of a public relations man and sort of looked over the entire place." (T–39). Carl Hirschle testified that after Knightsbridge entered the picture, the petitioner merely oversaw the dining room, made repairs, and was responsible for public relations.

Notwithstanding the testimony of the petitioner, his wife, and his brother-in-law, the evidence shows that the petitioner was deeply involved with the day-to-day operations of Route 31 after the contract with Knightsbridge was executed. At most, Knightsbridge assumed control of the bookkeeping at Route 31, but the petitioner continued to help operate Route 31. The petitioner shared authority with Ned Hansen.

The petitioner testified at length of Ned Hansen's involvement with Route 31, but the evidence does not support a finding that Ned Hansen exercised exclusive control over the affairs of Route 31. The language used in IC 6–2.5–9–3 and IC 6–3–4–8(d) is not phrased so as to exclude one individual from responsibility merely because it might also extend to another. This is also the position of the federal courts with respect to I.R.C. § 6671(b) and I.R.C. § 6672, which contain language similar to that used in the Indiana statutes.

I.R.C. § 6672 states in pertinent part that

[a]ny person required to collect over, truthfully account for, and pay over any tax ... who willfully fails to ... pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected....

I.R.C. § 6671(b) defines "person" as "an officer or employee of a corporation ... who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." The federal statute requires an element of willfulness which is not required under Indiana law; however, the analysis of who is a "responsible person" is not changed by this factor.

In *Scott v. United States* (1965), 173 Ct.Cl. 650, 354 F.2d 292, the Court stated:

*It is inconsequential that exclusive control over all corporate affairs was not vested in [the taxpayer],* or that the corporation's president retained a considerable measure of decision-making discretion. Section [6672] is not so phrased or designed as to exclude one corporate officer from its sanction merely because it might also be held to extend to another. Realistically read, *the subsection encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default* which constitutes a violation of § [6672], *even though liability may thus be imposed on more than one person.*

*Id.* 354 F.2d at 296 (emphasis added). *See also Godfrey v. United States* (Fed. Cir.1984), 748 F.2d 1568, 1575; *Hartman v. United States* (8th Cir.1976), 538 F.2d 1336, 1345; *Harrington v. United States* (1st Cir.1974), 504 F.2d 1306, 1312; *Monday v. United States* (7th Cir.1970), 421 F.2d 1210, 1214; *White v. United States* (1967), 178 Ct.Cl. 765, 372 F.2d 513, 518–19.

In *McCarty v. United States* (1971), 194 Ct.Cl. 42, 437 F.2d 961, 967–68, the Court stated:

> As a general proposition it may be safely postulated that one who is the founder, chief stockholder, president, and member of the board of directors of a corporation (such as the plaintiff) is rebuttably presumed to be the person responsible under section [6672] of the Code and is thus liable for the penalty, in the absence of an affirmative showing by him that in actual fact he lacked the ultimate authority to withhold and pay the employment taxes in question....

*Accord Feist v. United States* (1979), 221 Ct.Cl. 531, 607 F.2d 954, 960; *Barrett v. United States* (1978), 217 Ct.Cl. 617, 580 F.2d 449, 454; *Gray v. United States* (D.Kan.1984), 586 F.Supp. 1127, 1130.

Federal courts have held individuals liable as responsible persons in situations involving only minimal corporate functions. *See, e.g., Schweitzer v. United States* (D.Neb.1961), 193 F.Supp. 309 (taxpayer, who as president, majority shareholder, and chairman of the board had authority under articles of incorporation to determine payment of bills and to direct payment of taxes, was held personally liable as responsible person under federal law, despite the fact that he left active management of the corporation to another officer, who directed payment of bills, signed checks, and prepared tax returns).

The same principles apply here; IC 6–2.5–9–3 and IC 6–3–4–8(d) were intended to reach any and all persons under a duty to remit taxes. Even though Ned Hansen exercised some control over Route 31, the petitioner retained authority to remit the taxes owed by Route 31. While the Court has a great deal of compassion for the petitioner and recognizes his actions in entering into the agreement with Knightsbridge as a serious effort to save his business, he nevertheless failed to take sufficient steps to legally remove himself from the obligations imposed by the statutes. It is unfortunate that Knightsbridge, offering hope for Route 31's survival, apparently lacked the integrity, expertise, and skills necessary to be successful. Nevertheless the facts do not support petitioner's contention that he lost control of Route 31 by virtue of the contract between Route 31 and Knightsbridge.

The order of the department denying the taxpayer's protest is affirmed. Judgment is entered for the department. The injunction heretofore entered is dissolved.