**ESTATE OF Eugene B. HIBBS, Appellant (Respondent Below),**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellee (Petitioner Below).**

No. 49T10–9310–TA–00086.

Tax Court of Indiana.

June 17, 1994.

Robert S. Hulett, Vicki L. Anderson, Hackman McClarnon Hulett & Cracraft, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Kathryn Symmes Hall, Deputy Atty. Gen., Indianapolis, for appellee.

FISHER, Judge.

Bank One Indianapolis, N.A. (Bank One), as personal representative of the Estate of Eugene B. Hibbs (the Estate), appeals the Marion County Superior Court, Probate Division's (the Probate Court) October 1993 judgment redetermining the Estate's Indiana inheritance tax liability.

## ISSUE

Whether the Probate Court erred in finding that the Estate failed to make a qualified terminable interest property (QTIP) election under IND.CODE 6–4.1–3–7.

## STANDARD OF REVIEW

■ The Indiana Tax Court has jurisdiction to review appeals from the final determinations of a probate court concerning the amount of Indiana inheritance tax due. IND.CODE 6–4.1–7–7. In its review of those final determinations, the tax court acts as a true appellate tribunal. *See Indiana Dep't of State Revenue v. Estate of Puschel* (1991), Ind.Tax, 582 N.E.2d 923, 925. Accordingly, the tax court will affirm the probate court's judgment upon "any legal theory supported by evidence introduced at trial." *See Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 666 (citing *United Farm Bureau Mut. Ins. Co. v. Blanton* (1983), Ind.App., 457 N.E.2d 609, 611) *trans. denied.* More specifically, the tax court will reverse the probate court's judgment only if there is no substantial evidence of probative value to support the judgment. *See In re Paternity of Tompkins* (1989), Ind.App., 542 N.E.2d 1009, 1013 (citing *Rubsam v. Estate of Pressler* (1989), Ind.App., 537 N.E.2d 520; *Cole Real Estate Corp. v. Peoples Bank & Trust* (1974), 160 Ind.App. 88, 310 N.E.2d 275). The court will not reweigh the evidence, nor will it assess witness credibility. *Id. See also Vanderburgh,* 575 N.E.2d at 666 (citing *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320).

## FACTS AND PROCEDURAL HISTORY

Eugene B. Hibbs (the Decedent), died testate on October 27, 1991, at the age of eighty. He was survived by his wife and two adult children.

Pursuant to the Decedent's instruction in his Last Will and Testament, and the Probate Court's appointment, Bank One assumed its duties as the Estate's personal representative on November 6, 1991. In that capacity, Bank One timely filed an Indiana Inheritance Tax Return Form IH–6 (the Return) for the Estate on January 25, 1993. With the Return, it attached copies of the following: 1) the Decedent's Last Will and Testament dated August 16, 1991; 2) the Decedent's revocable trust dated August 16, 1991; 3) the Estate's U.S. Federal Estate Tax Return Form 706 (Form 706) filed with the Internal Revenue Service (the IRS) on October 17, 1992; and 4) an amended Form 706 filed with the IRS on or about January 25, 1993. In computing the inheritance tax, the Estate treated the property passing from the Decedent to his surviving spouse as QTIP property and took the exemption provided in IC 6–4.1–3–7(c).

The county inheritance tax appraiser reviewed the Return, pursuant to IND.CODE 6–4.1–5–2, and then forwarded it to the Probate Court. On February 25, 1993, the Probate Court entered its "Order Determining Inheritance Tax Due" in the amount of $59,985.60.

The Return was then submitted to the Department for review. On April 8, 1993, the Department notified the Estate that it owed an additional $246,748.36 in inheritance taxes, alleging that the Estate failed to properly elect QTIP treatment as provided in IC 6–4.1–3–7(c). Consequently, on June 23, 1993, the Department filed a "Petition for Rehearing, Reappraisement and Redetermination of Inheritance and Transfer Tax" with the Probate Court. The Probate Court held a hearing on the Department's petition on September 15, 1993, and, on October 20, 1993, entered an "Order Redetermining Inheritance Tax" for an additional $246,748.36. The Estate paid the additional inheritance tax plus interest, and initiated this appeal. The Estate now seeks a refund of the Indiana inheritance tax it claims the Department erroneously collected. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ "An inheritance tax is imposed at the time of a decedent's death on certain property interest transfers made by him." IND. CODE 6–4.1–2–1. The tax is not imposed on the property itself, "but [rather] on the *transfer of ownership* of either the legal or beneficial interest in the property." *Estate of Puschel*, 582 N.E.2d at 925 (citing *Conway's Estate v. State ex rel. Klaus* (1918), 72 Ind.App. 303, 314, 120 N.E. 717, 720) (emphasis in original). "For determining inheritance tax, therefore, the critical time is the date of the decedent's death." *Id.* at 925 (and cases cited therein).

■ The Indiana inheritance tax is imposed on the fair market value of the interest as of the date of a decedent's death or the date used to value the property interest for federal estate tax purposes. IND.CODE 6–4.1–2–1; IND.CODE 6–4.1–5–1.5. If a beneficiary receives less than a fee interest in the property transferred by reason of a decedent's death (i.e. the interest is future, contingent, defeasible, or a life interest), however, the inheritance tax is calculated pursuant to actuarial tables as of the date of the decedent's death. IND.CODE 6–4.1–6–1. Thus, when a life estate with a remainder is created, both the life tenant and the remainderman will pay Indiana inheritance tax on their proportionate interests, based on the interests' values at the date of the decedent's death. *See id.*

■ Property interests that pass from a decedent to a surviving spouse, however, are exempt from the Indiana inheritance tax. More specifically, IC 6–4.1–3–7(c) allows property to qualify for an Indiana inheritance tax marital exemption (the Exemption) if it is QTIP. QTIP is property in which a deceased spouse passes to a surviving spouse a "qualifying income interest for life." 26 U.S.C. § 2056(b)(7)(B)(i).[1] The surviving spouse has a qualifying income interest for life if he/she is entitled to all of the income for life and if, during his/her lifetime, no one has the power to appoint any part of the property to any person other than him/her.

26 U.S.C. § 2056(b)(7)(B)(ii). Thus, "[t]he entire property, the life interest as well as the remainder, is treated as passing to the surviving spouse and, therefore, the entire property qualifies for the marital [Exemption]." *Estate of Higgins v. Commissioner* (6th Cir.1990), 897 F.2d 856, 859. Thus, the net effect of making a QTIP election is that the payment of inheritance tax is deferred until the death of the surviving spouse. *See* IND.CODE 6–4.1–2–4(d). In other words, the remainderman will pay the inheritance tax on the value of the entire property at the date of death of the surviving spouse.

■ To obtain QTIP treatment, the personal representative of an estate must elect QTIP treatment. The only guidance to making a QTIP election for the Exemption is IC 6–4.1–3–7:

(c) The personal representative of the decedent's estate or the trustee or transferee of property transferred by the decedent may, for the purpose of the exemption ... elect to treat property passing from the decedent in which the surviving spouse has a qualifying income interest for life as a property interest which a decedent transfers to his surviving spouse....

(d) *The election ... shall be made in writing and shall be attached to the inheritance tax return, if one is required to be filed. The election, once made, is irrevocable.*

(Emphasis added).

"[S]tatutory words and phrases are given their plain, ordinary, and usual meaning...." *Shoup Buses, Inc. v. Indiana Dep't of Revenue* (1994), Ind.Tax, 635 N.E.2d 1165, 1168 (citing *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 961). The verb "attach" is defined as "to make fast or join (as by string or glue): bind, fasten, tie." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 140 (1981). Thus, the plain meaning of the language in IC 6–4.1–3–7(d) requires that the election to treat property as QTIP be made on a separate document or docu-

---

1. Indiana expressly relies on the federal code to define the substance of a QTIP by allowing the Exemption for "qualifying income interest for life (as defined in Section 2056(b)(7) of the Internal Revenue Code)." IC 6–4.1–3–7(c).

ments fastened to the Indiana inheritance tax return by some method.[2]

■ Because there is no statute, case law, regulation, or any other rule explaining what documents can, and what documents cannot, be used as an attached writing for purposes of IC 6–4.1–3–7(d), the Estate attached copies of the Decedent's Last Will and Testament dated August 16, 1991; the Decedent's revocable trust dated August 16, 1991; a Form 706 filed with the IRS on or about October 17, 1992; and an amended Form 706 filed with the IRS on or about January 25, 1993. The Estate contends that these four documents are sufficient to qualify as writings attached to the return under IC 6–4.1–3–7(d), and that, consequently, the Estate made a valid QTIP election.

■ Both parties acknowledge that the Decedent's will explicitly cites IC 6–4.1–3–7. *Transcript* at 248, 271. It provides in relevant part:

### ITEM SIX

My Executor is directed to elect to qualify the property in the trust referred to in ITEM FIVE hereof, (to the extent and manner set forth in the trust agreement referred to in said item) as qualified terminable interest property for purposes of Marital Deduction and as a property interest which a decedent transfers to his or her surviving spouse and exempt from Indiana death tax as provided in I.C. § 6–4.1–3–7 ...

*Record* at 3–4. Likewise, Article Seven, section II of the Decedent's trust provides:

My personal representative has been directed in my Last Will and Testament to elect to treat all of the trust property in the Trust (and the trust over such property) as qualified terminable interest property for purposes of the Marital Deduction and as a property interest which a decedent transfers to his or her surviving

spouse and exempt from Indiana death tax as provided in I.C. § 6–4.1–3–7 ...

*Record* at 159–60.

The Department argues, however, that these provisions do not satisfy the election requirement for two reasons. First, the language in the Decedent's will and trust merely indicates that Bank One was directed to elect Indiana QTIP treatment, not that it did so. In other words, the Department maintains that the Decedent's use of the word "direct" in both his will and trust is precatory, not mandatory. Accordingly, the court must determine whether "My Executor is directed to qualify the property ... as [QTIP]" amounts to a command or a suggestion.

The purpose of a will ... is to allow the testator to finalize his or her earthly endeavors and concerns from beyond the grave. But as Lord Coke twigged long ago, testators and their attorneys are occasionally far from precise in recording the testator's final wishes. One problem, precatory language, haunts us still. Precatory words are those 'whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction.' Examples have been held to include 'wish,' 'want,' 'desire,' 'ask,' 'request,' and 'should.' One thing is clear: a command must be, when possible, performed, but a suggestion need not be.

*Dwyer v. Allyn* (1992), Ind.App., 596 N.E.2d 903, 906 (citations omitted).

A number of rules of construction aid the court in determining the meaning of "direct:"

[First,] '[w]hether words are precatory or mandatory depends upon the express intention of the testator and is determined by the context of the will.' *Forth v. Forth* (1980), Ind.App., 409 N.E.2d 1107, 1113.... [Second,] '[w]here the maker of the will repeatedly uses concise, legal, and technical terms to express his intention to vest an estate or interest in property, a change in phraseology to precatory expressions in connection with the disposition of other property indicates rather clearly that he did not intend such precatory words to create enforceable obligations; otherwise,

---

**2.** The QTIP election for federal estate tax purposes, however, "shall be made by the executor

*on* the [federal] return ..." 26 U.S.C. § 2056(b)(7)(B)(v) (emphasis added).

he would not have abandoned language with which he was familiar and which was unmistakably suited for the purpose.' *Lewis v. Atkins* (1952), 122 Ind.App. 618, 105 N.E.2d 183).

*Id.*

The definition of the word "direct" indicates that it is a command: "to prescribe esp[ecially] by formal or mandatory instruction or legal enactment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 640 (1981). The words "I direct," "shall," "I give," and "I hereby constitute," in dispositive clauses are concise, legal, and specific. *Dwyer*, 596 N.E.2d at 907. Consequently, they have been held to constitute unequivocal commands and clearly convey a sense of obligation. *See id.* In the case at bar, the Decedent has, throughout his will and trust, used concise, legal, and specific language in his dispositive clauses: "I direct," "charges shall be paid," "I give," and "My Executor is hereby directed." *Record* at 1–10, 154–70. Nowhere in either his will or his trust has the Decedent changed his phraseology to precatory expressions, indicating a contrary intent. *See id.* Thus, the court holds that the Decedent intended "My Executor is directed . . ." to be a straightforward command.

The Department also contends that the Decedent's will and trust, despite their mandatory language, are insufficient to serve as an election for yet another reason. An estate is always required to attach a copy of a decedent's will to the Indiana inheritance tax return, whether or not it elects QTIP treatment. IND.CODE 6–4.1–4–1(b). *See also* 45 I.A.C. 4–1–2. Likewise, 45 I.A.C. 4–1–3 provides that "where the decedent is the settlor of an inter vivos trust . . . a copy of the instrument creating such trust . . . shall be attached . . ." "Thus, [the Department argues,] IC 6–4.1–3–7 language requiring election by an attached writing would be duplicative and unnecessary if a will and trust were enough." *Respondent's Brief* at 17.

"[T]he court's foremost goal in construing [a statute] is to determine the true intent of the legislature." *Shoup*, 635 N.E.2d at 1168 (citing *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 768, *aff'd* (1992), Ind., 587 N.E.2d 1311). Therefore, the court must determine the legislature's intent in requiring the Indiana QTIP election to be on an attached writing.

When construing a state statute, a federal statute with similar language and purpose may provide the court with a tool in interpreting the state statute. *See Dunkerson v. Indiana Dep't of Revenue* (1987), Ind.Tax, 513 N.E.2d 209, 211–12. *See also Hamilton County Dep't of Pub. Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 170, n. 2 (citing *Indiana Civil Rights Comm'n v. Sutherland* (1979), 182 Ind.App. 133, 140, 394 N.E.2d 949, 954). The court recognizes that to make a federal QTIP election, "§ 2056(b)(7) requires a clear manifestation of an affirmative intent to elect qualified terminable interest treatment." *Estate of Spohn v. United States* 90–2 T.C.M. (CCH) 60,027, 1990 WL 300358 (citing *Estate of Higgins*, 897 F.2d at 859). More specifically,

"[t]he intent of § 2056(b)(7) is that the election must be unequivocally communicated . . . thereby binding the estate to the tax treatment determined by the executor to be the most beneficial. The section was not enacted to allow the taxpayer to take a 'wait and see' approach. As in the case of other elective provisions, the policy of the section 'is furthered by requiring a clear manifestation to the government of taxpayer's election'; any other rule 'would leave room for the taxpayer to argue later that it had never intended to make an election. . . .' "

*Estate of Higgins*, 897 F.2d at 859–60 (citations omitted). The court therefore presumes that the legislature intended the attached writing to be a means by which an estate's personal representative could manifest an affirmative, unequivocal intent to elect Indiana QTIP treatment. *See Dunkerson*, 513 N.E.2d 209, 211–12.

In this case, it is clear that the Decedent intended Bank One to elect QTIP treatment for Indiana inheritance tax purposes. The language the Decedent used in both his will and trust is an unequivocal communication to Bank One of that intent:

*My Executor is directed to qualify the property* in the trust ... *as qualified terminable interest property* for purposes of Marital Deduction and as a property interest which a decedent transfers to his or her surviving spouse and *exempt from Indiana death tax as provided in I.C. § 6–4.1–3–7* ...

*Record* at 3–4 (emphases added).

"When the language of a statute is plain and unambiguous, the court has no power to construe the statute for the purpose of limiting or extending its operation." *F.A. Wilhelm Const. Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 586 N.E.2d 953, 955 (citing *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1380). Nevertheless, the Department wants the court to read IC 6–4.1–3–7(d) as saying "[t]he election ... shall be made in writing and shall be attached to the inheritance tax return *and the election shall not be contained within the contents of any attached testamentary and dispositive documents.*" Those words are not in the statute and the court will not put them there. That is a function proper for the legislature.

■ The Decedent's will and trust provisions unequivocally and affirmatively communicate his intent that Bank One, as personal representative, elect Indiana QTIP treatment. The legislature intended the "attached writing" requirement as a means by which to communicate that intent. Thus, absent a regulation providing for a specific method by which to make the QTIP election, an estate's personal representative may elect Indiana QTIP treatment by attaching a will or trust that unequivocally communicates intent to elect that treatment.[3]

### CONCLUSION

For the foregoing reasons, the Decedent's will and trust, attached to the Return as separate writings, were a sufficient means by which the Estate elected Indiana QTIP treatment.[4] Accordingly, the judgment of the Probate Court is reversed.

---

3. Interestingly enough, the Department promulgated 45 I.A.C. 4.1–3–5 during the pendency of this case. Subsection (b)(4) states:

The [Indiana QTIP] election must be in form and content substantially as follows:

Pursuant to IC 6–4.1–3–7, an election is hereby made to treat the following property passing from the decedent in which the surviving spouse has a qualifying income interest for life as a property interest which a decedent transfers to the decedent's surviving spouse:

| Qualified Property | Percentage |
| --- | --- |
| | |
| | |

It is understood that this QTIP election is irrevocable and cannot be reversed.

 Signature _____

 Title _____

Administrative rules and regulations are subject to the same rules of construction as statutes. *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 586, *aff'd* (1992), Ind., 585 N.E.2d 1336. Statutes are to be given prospec-

tive effect only, unless the enacting body unambiguously and unequivocally intended retrospective effect as well. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 622 N.E.2d 1058, 1062 (citing *State ex rel. Indiana State Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 832). There is no evidence that the Department unambiguously and unequivocally intended 45 I.A.C. 4.1–3–5(b)(4) to have retroactive effect. Accordingly, the provision may be applied prospectively only, effective June 1, 1994.

4. Although the Forms 706 filed with the Return are illustrative in showing that the Estate intended to elect QTIP treatment for federal purposes, they must be distinguished from the intent to make an Indiana election. The requirements for electing Indiana QTIP treatment are different from the requirements for electing federal QTIP treatment, *see* n. 2, *supra,* and there is no requirement to elect both state and federal QTIP treatment. Thus, if an estate elects federal QTIP treatment, it may not necessarily elect Indiana QTIP treatment and the Forms 706 therefore have no bearing on today's ruling.