INDIANA DEPARTMENT OF STATE
REVENUE, Appellant (Respondent
Below),

v.

Zinat SAFAYAN, Appellee
(Petitioner Below).

No. 49S10–9406–TA–580.

Supreme Court of Indiana.

July 26, 1995.

Pamela Carter, Atty. Gen., Brian D. Scott, Deputy Atty. Gen., Indianapolis, for appellant.

Carol M. Adinamis, Susan L. Adinamis, Indianapolis, for appellee.

SHEPARD, Chief Justice.

We explore for the first time the personal responsibility of corporate officers for taxes collected but not forwarded to the state treasury. We hold the corporation president in this case responsible for the funds.

### I. Facts and Case History

In 1985, appellee Zinat Safayan and her husband, Dr. Esfandiar Safayan, decided to start a restaurant with Dennis and Teressa Grubb. The Safayans and Grubbs incorporated their venture as G.D.G.F., Inc. and opened Gib & Denzil's Restaurant in Bloom-ington.[1] The Safayans contributed the funds for the project, some $43,000, and received 51% of the corporation's stock. The Grubbs contributed their expertise in the restaurant business and received 49% of the stock. The four were also the directors and officers of the corporation. They decided that Mrs. Safayan would be president, while Dr. Safayan and Mr. Grubb were vice-presidents, and Mrs. Grubb was the treasurer and secretary.

The Grubbs managed the day-to-day operations of the restaurant while Dr. Safayan and Mrs. Safayan, a registered nurse, tended their medical practice in Terre Haute. The corporation engaged Mr. Grubb under an employment agreement in which he agreed, among other things, to supervise and manage the restaurant, to select the personnel, and to maintain and prepare "accurate and current financial information, documentation and records." As secretary and treasurer, Mrs. Grubb was responsible for tending the corporate bank account and the financial records. The Grubbs were the only signatories on the corporate checking account. Mrs. Grubb filed the restaurant's corporate income tax return for 1988. Mrs. Safayan filed the 1989 and 1990 returns in her capacity as president.

In January 1991, Mrs. Safayan discovered that the restaurant had not paid its Indiana gross retail taxes or its withholding taxes for several years. She also found that the restaurant was in default on its federal taxes and on many of its debts to private creditors. Mrs. Safayan promptly took charge of the situation. With the help of her attorneys and an accountant, she put G.D.G.F. into Chapter 11 bankruptcy in a matter of weeks. In November 1991, she filed the appropriate tax forms with the Indiana Department of State Revenue but disclaimed any personal responsibility for the restaurant's delinquency. The bankruptcy action was dismissed in June 1992, and the Internal Revenue Service seized the restaurant's assets. That same month, Mrs. Safayan formed Z.E.A., Inc. in

---

1. The Safayans and Grubbs also formed a partnership in connection with their business. In the Tax Court, the Department argued that the partnership, not the corporation, was liable for the taxes. The court held, however, that the corporation owned and operated the restaurant. *Safayan v. Department of State Revenue* (1994), Ind.Tax, 631 N.E.2d 25, 26–28. The Department does not challenge this determination.

an effort to keep the restaurant open. This new company purchased the restaurant equipment from the I.R.S.

The Department assessed Mrs. Safayan for the company's unpaid taxes and penalties for 1989, 1990, and 1991. She challenged the assessment, and the Department conducted a hearing. It subsequently found that she "was a 'responsible officer' of the corporation and therefore personally liable for sales and withholding taxes." Mrs. Safayan appealed to the Tax Court, and it entered summary judgment in her favor. The court held that because she acted more as an investor than as the restaurant's manager, she did not have a duty to remit the taxes. *Safayan v. Department of State Revenue* (1994), Ind. Tax, 631 N.E.2d 25. We granted the Department's petition for review of the Tax Court's decision.

## II. Standard of Review

This Court extends cautious deference to decisions within the special expertise of the Tax Court, and we do not reverse unless the ruling is clearly erroneous. *Department of State Revenue v. Bethlehem Steel Corp.* (1994), Ind., 639 N.E.2d 264, 266; *See also* Ind.Tax Court Rule 10. We extend the same presumption of validity to Tax Court rulings on summary judgments and apply the same standard of review. *Bethlehem Steel*, 639 N.E.2d at 266.

We take care not to extend the force and operation of tax statutes beyond the clear import of their language. When in doubt about the imposition of a tax, we construe statutes against the State and in favor of the taxpayer. *See Gross Income Tax Div. v. Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50 (applying rule of lenity to gross income tax), *certs. denied*, 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353, 346 U.S. 829, 74 S.Ct. 52, 98 L.Ed. 354 (1953); *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301 (applying rule of lenity to gross retail and use tax). By contrast, taxpayers claiming exemptions have the burden to show they meet the terms of the exemption statutes.

*General Motors Corp. v. Department of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, *aff'd*, (1992), Ind., 599 N.E.2d 588.

## III. The Problem of Officer Liability

The taxes at issue in this case are the gross retail tax, Ind.Code Ann. § 6–2.5–3–2 (West 1989 & Supp.1990), and the withholding tax on employee wages, Ind.Code Ann. § 6–3–4–8 (West 1989). These are termed "trust taxes" because the obligors pay them to third parties designated by statute to collect, hold, and remit the money to the State. These third parties hold the funds in trust for the State and thus may be held personally liable when the funds are not remitted.

More specifically, the gross retail tax is levied on the purchasers of retail goods, but the retail merchants must "collect the tax as ... agent[s] for the state." Ind.Code Ann. § 6–2.5–2–1(b) (West Supp.1993).[2] The Code also provides that individuals responsible for remitting these taxes may be held personally liable for any default. The liability provision reads:

> An individual who:
>
> (1) is an individual retail merchant or is an employee, officer, or member of a corporate or partnership retail merchant; and
>
> (2) has a duty to remit state gross retail or use taxes to the department of revenue; holds those taxes in trust for the state and is personally liable for the payment of those taxes, plus any penalties and interest attributable to those taxes, to the state.

Ind.Code Ann. § 6–2.5–9–3 (West 1989).

The collection and remittance of the withholding tax operates about the same way. Income tax is assessed on the wages of employees, but it is the employer who must "deduct, retain, and pay" the tax to the government. Ind.Code Ann. § 6–3–4–8(a). Moreover, the law provides that "[i]n the case of a corporate or partnership employer, every officer, employee, or member of such employer, who, as such officer, employee, or member is under a duty to deduct and remit

---

2. The merchants are compensated for their effort. Under Ind.Code § 6–2.5–6–10, they are entitled to deduct 1% of the amount collected as a "retail merchant's collection allowance" if the taxes are properly remitted to the Department.

such taxes shall be personally liable for such taxes, penalties, and interest." Ind.Code Ann. § 6-3-4-8(f).

The legislature enacted these personal liability provisions because when a business begins to falter, the trust taxes form a tempting reserve of cash. The temptation often proves too great, and those in charge of the failing enterprise sometimes convince themselves that they can use the money to save their business and pay the State later when business is better. Whether this gamble succeeds or fails, the State and the taxpayers cannot be made unwilling business partners. More bluntly, the taxpayer has already paid the tax; the business collecting the tax should not be allowed to divert these funds dedicated to public schools, safety, and other purposes to the business's private use. Thus, when the responsible individuals fail to perform their roles as trustees, they are held personally accountable.

■ The method of determining whether a given individual is a responsible person is the same under the gross retail tax and the withholding tax. *Dunkerson v. Department of Revenue* (1987), Ind.Tax, 513 N.E.2d 209. An individual is personally liable for unpaid sales and withholding taxes if she is an officer, employee, or member of the employer who has a duty to remit the taxes to the Department. Because it is undisputed that Safayan was president of G.D.G.F. during the years in question, the only remaining issue is whether she had the duty to remit the taxes.

■ The statutory duty to remit trust taxes falls on any officer or employee who has the authority to see that they are paid. *See Department of Revenue v. Hogo, Inc.* (1990), Ind.App., 550 N.E.2d 1320; *Dunkerson*, 513 N.E.2d 209; *Van Orman*, 416 N.E.2d 1301. Various factors are relevant to determining who has such authority.

■ We consider, first, the person's position within the power structure of the corporation. The responsible person need not have been a corporate officer, but where the individual was a high ranking officer, we presume that he or she had sufficient control over the company's finances to give rise to a duty to remit the trust taxes. The presumption is especially strong where the person was both a high ranking officer *and* a member of the board of directors *and* a major shareholder in a closely held corporation. This presumption may be rebutted by showing the officer did not in fact have that authority. *Dunkerson*, 513 N.E.2d at 212.

We also look to the authority of the officer or employee as established by the articles of incorporation, bylaws, or the person's employment contract. The explicit duties of the officer or employee may include oversight and payment of tax liabilities.

Finally, we consider whether the person actually exercised control over the finances of the business. This would include, for instance, whether the person controlled the corporate bank account, signed corporate checks and tax returns, or determined when and in what order to pay creditors.[3]

■ In this case, Mrs. Safayan was both the highest ranking official in G.D.G.F. and a member of its board of directors, and a major shareholder. Together, she and her husband controlled more than half of the shares. Given her position of power within the corporation, we presume that she had the authority to see that the State received its money.

Safayan attempts to rebut this presumption with evidence that the responsibility for paying the taxes fell on the Grubbs, not on her. She contends she delegated responsibility to pay the taxes to the Grubbs, and cites G.D.G.F.'s bylaws, which provided that the secretary and treasurer (Mrs. Grubb) was to oversee the corporation's finances. She points to Mr. Grubb's employment contract, which required him to manage the day-to-day operations of the restaurant.

---

**3.** Other state and federal courts interpreting similar provisions often employ standards with very specific elements, like whether the person had the power to hire and fire employees. *See, e.g., Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir.1993); *Olson v. Department of Revenue*, 304 Or. 241, 744 P.2d 240, 243 n. 2 (1987); *Blodnick v. New York State Tax Comm'n*, 124 A.D.2d 437, 507 N.Y.S.2d 536, 538 (1986). Such specifics are only relevant, however, insofar as they show the individual actually exercised control over corporate finances.

The Department is not required, however, to prove that Safayan was the only responsible person. A party may be liable for trust taxes without having exclusive control over the corporation's funds. *Hogo*, 550 N.E.2d at 1324; *Dunkerson*, 513 N.E.2d at 211.

Safayan's contention that she delegated the responsibility to pay the taxes to the Grubbs is also unavailing. In *Van Orman*, for example, the president, general manager, and majority shareholder of a hotel sought to avoid his responsibility for a default on the sales tax by pointing to a serious medical problem that prevented him from managing the affairs of the business. The Court of Appeals rightly upheld the president's liability. It reasoned that while others had taken over management of the hotel during the relevant period, the president had not relinquished his position of authority and that "the exercise of the authority of his corporate office was a matter within his discretion and subject to his will." *Van Orman*, 416 N.E.2d at 1304.

To be sure, G.D.G.F.'s articles of incorporation and bylaws did not specifically require Mrs. Safayan to monitor the company's taxes or finances. They simply outlined the general powers of a corporate president.[4] The Tax Court properly characterized these documents as neither rebutting the presumption that Safayan was responsible nor enhancing the Department's position. *Safayan*, 631 N.E.2d at 29.

Safayan argues finally that she should not be held liable because she was not involved in the day-to-day operations of the restaurant and never exercised control of the business's finances. She contends that she was merely a passive investor who lacked the requisite authority and control to be held liable for these taxes. In essence, she denies responsibility because until a moment of emergency arrived she knew nothing, saw nothing, and did nothing. It is a tax code version of the Sergeant Schultz defense.[5]

If she had been truly content to remain passive, her position as a major shareholder and a director of G.D.G.F. would have sufficed. Had Safayan desired some additional influence, she could have served as the chair or even the vice-chair of the board. Like many people who put up cash for a business venture, the Safayans wanted to be more than passive investors. They wanted some control, and with Mrs. Safayan as president, they secured that control.

Moreover, the course of events demonstrated that Safayan possessed authority to manage corporate affairs without seeking board approval. As soon as she learned of the business's problems, she quickly sacked the Grubbs and put the restaurant in bankruptcy. She also moved to resolve the restaurant's tax difficulties while simultaneously attempting to protect herself from personal liability. She even formed a new corporation in an effort to keep the restaurant open.

Our analysis of Safayan's liability is not unique. A number of federal circuit courts have held officers personally liable in similar circumstances under equivalent provisions of

---

4. For instance, under the bylaws, Safayan was required to "preside at all meetings of the Shareholders and Directors" and "discharge all the duties which devolve upon a presiding officer." Bylaws of G.D.G.F., Inc., Ex. 10 § 6.06. She was also expressly given the power to co-sign checks, *id.* § 8.01, and to execute "[a]ll deeds, notes, bonds and mortgages made by the Corporation and all other written contracts and agreements, other than those executed in the ordinary course of corporate business," *id.* § 8.02. Nothing in the bylaws prevented Mrs. Safayan from executing contracts and agreements on behalf of G.D.G.F. in the ordinary course of business.

5. The Sergeant Schultz defense refers, of course, to the refrain of the character by that name in the television comedy, *Hogan's Heroes*. Sergeant Schultz was assigned the unenviable task of guarding Colonel Hogan and his men in a German prisoner of war camp during World War II. Each week, despite the best efforts of the camp's commandant, Colonel Klink, the 'prisoners' would successfully conduct espionage operations from inside the prison. And each week, the lovable, if incompetent, sergeant would stumble upon some clue to Hogan's activities. Instead of pursuing these leads, however, Schultz would simply declare, "I know n-oth-i-n-g, I see n-oth-i-n-g, n-oth-i-n-g." *Cf. Ortho Pharmaceutical Corp. v. Sona Distributors, Inc.* 663 F.Supp. 64, 66 (S.D.Fla.1987) (rejecting Sergeant Schultz defense to fraudulent misrepresentation claim).

the federal withholding tax.[6] The Tenth Circuit, for instance, recently held the president and sole shareholder of a hotel liable for withholding taxes even though he delegated financial matters to a business manager. The court explained that "[t]he existence of such authority, irrespective of whether that authority is actually exercised, is determinative" of liability. *Muck v. United States*, 3 F.3d 1378, 1381 (10th Cir.1993).

In addition, the Sixth Circuit held the vice-president and fifty percent shareholder of a truck leasing and repair company liable for withholding taxes against the defense that he was merely a passive investor. The court acknowledged that the officer had not been heavily involved in the company before discovering its financial problems, but grounded its finding of liability on the fact that he stepped in and took over management once the troubles became apparent. The vice-president displaced the president and like Mrs. Safayan, endeavored to revive the business, including starting a new corporation to continue operations. *Kinnie v. United States*, 994 F.2d 279 (6th Cir.1993).[7]

It strains credulity to imagine that Safayan lacked the authority to see that G.D.G.F.'s taxes were paid. Individuals in such positions may not look the other way with impunity while their business partners dispose of taxpayer money. We agree with Judge Posner, who recently stated that these trustees cannot escape responsibility and liability merely by "compartmentalizing responsibilities within a business ... and adopting a hear no evil—see no evil" policy. *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987) (addressing willfulness requirement of federal withholding tax statute).

### IV. Conclusion

We reverse the Tax Court's grant of summary judgment for Mrs. Safayan and order summary judgment for the Department. We remand for a determination of the amount of Safayan's tax liability.

DeBRULER, SULLIVAN, and SELBY, JJ., concur.

DICKSON, J., dissents without separate opinion.

---

**6.** The federal government requires employers to withhold social security and personal income taxes from their employees' wages, 26 U.S.C. §§ 3102(a); 3402(a) (1994), and to hold these funds in trust, 26 U.S.C. § 7501(a) (1994). The Code further provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (1994). "Person" in this section "includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b) (1994).

Thus, as under Indiana law, in a federal case the government must demonstrate not only that the individual was responsible, but further that the person was willfully remiss. Despite this difference, the federal case law determining who may be considered a responsible person remains helpful authority. *See Hogo*, 550 N.E.2d at 1323; *Dunkerson*, 513 N.E.2d at 211.

**7.** *See also Thomsen v. United States*, 887 F.2d 12 (1st Cir.1989) (treasurer liable based in part on evidence he eventually closed operations and took possession of corporate financial records and inventory); *but see O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir.1992) (vice-president, director, and 50% shareholder not liable because "taxpayer assume[d] a title merely for the purpose of protecting his investment").